Good morning, Your Honors, and may it please the Court. My name is Mark Ebert, and I represent Mr. Joseph Messer. I think the briefing in this case has been pretty thorough and complete, and so I'm simply going to spend a couple of minutes responding to the State Supplemental Authority, which was submitted yesterday, and also to what I think is the implied criticism contained in that, which is that there is no clearly established Supreme Court precedent on point. And then I'll save the majority of my time for questions and rebuttal. Your Honors, the State cites Moses v. Payne, which is a 2008 Ninth Circuit case, for the proposition that there's no clearly established federal law requiring the giving of a lesser-included offense instruction. But that case, however, involved evidentiary questions, not jury instructions. And while it's true that the two-judge majority in that case did require fairly stringently that there be Supreme Court authority on point, which I think is almost commonplace today, doesn't make Ninth Circuit authority irrelevant. It doesn't mean you can't consider it, but obviously it has to be based ultimately on Supreme Court authority. Do we give a two-judge panel opinion less deference than we do a three-judge panel opinion? No, Your Honor. Not to my knowledge. That was just a gratuitous question. I'm simply saying that there is that that's all that they decided that I think is relevant to the main issue. Well, you've got two hurdles here. The first is that you're challenging the failure to give a voluntary manslaughter instruction in a case where your client was convicted of second-degree murder. Involuntary manslaughter. Involuntary. In a case where the jury convicted of murder two. And secondly, you're trying to argue that even if you get over the hurdle of our case law that says in a non-capital case you basically can't challenge the failure to give an instruction like that, you haven't got any Supreme Court authority that says you've got a due process violation. And so it seems to me you're sort of you're rowing upstream in a very rapidly moving current. Well, I would respectfully disagree with Your Honor's interpretation of the case law here. Even the case that the State relies on in saying there's no constitutional right to a lesser-included instruction, which is Wyndham v. Merkle, says that that's true only under Ninth Circuit law. It doesn't express, it doesn't address the two exceptions that the Supreme Court has carved out, that is, instructional error that so infects the trial that it violates due process or instructional error that prevents. But now we're back to the concern on the first hurdle of your argument. And that is the second hurdle. But I mean, the jury found murder two, which basically requires premeditation. Well, just I would just want to say that there is a Supreme Court authority which is cited in the briefs for the fact that instructional error, including instructional error on the issue of lesser-included offenses, can be a constitutional violation. Was this jury properly instructed on second-degree murder? I think there – it was never – to my knowledge, the second-degree murder instruction was never challenged as being proper. So for the purpose of this appeal, we assume that the jury was properly so instructed? On second-degree murder. But, Your Honor, I think we already know and the State concedes that they were improperly instructed on the voluntary manslaughter. By inserting an element that elevated the State's burden of proof. No. By saying that there – well, yes. By saying that there is an intent-to-kill requirement, which there was not. But the problem is that here you essentially, number one, you have second-degree murder with a higher in – a lesser intent requirement than voluntary manslaughter. In other words, voluntary manslaughter, according to the erroneous instruction that the State agrees was erroneous, required an intent-to-kill, and second-degree murder did not. I think your hurdles are turning into brick walls. Okay. Can I ask why so I can address it? Well, a perfectly legitimate question. The jury was properly instructed on the offense that your client was convicted  The – there's no assertion of error as to that. The instructional error you urge relates to a charge he was not convicted of, and the specific element of error is that that instruction added an element which in fact increased the State's burden of proof. That's – that's – that's my concern. Tell me how you feel. And my response to that, Your Honor, is what happened here is that the – by wrongly instructing on voluntary manslaughter, by not instructing on involuntary manslaughter, the Court's erroneous instructions essentially led the jury to only one conclusion, which is the higher charge of second-degree murder. And the theory – Because the other two options were taken away from them, and those other two options were consistent with what the defense argued, which is no intent to kill. And – and your theory is that they must necessarily have chosen murder, too, because they didn't want to walk in. Yes. And, in fact, the Supreme Court in Keeble v. United States, it's a lengthy site on page 5 of my reply brief, where the – the Supreme Court says or explains why that's important to the defense, that – that when one of the elements of the offense charge remains in doubt, but the defendant is plainly guilty of some kind of scouse in favor of conviction. For example, an intent to commit serious bodily injury is a necessary element of the crime with which Petition was charged, but not of the crime of simple assault. And since the nature of the Petitioner's intent was very much in dispute at trial, the jury could rationally have convicted him of simple assault if that option had been presented. I thought the defense was accidental shooting. It was. So if the choice is between it was an accident or it was done intentionally, aren't you back to the conundrum that Judge Hawkins was just questioning you about? I think what we're back to is that a combination of errors in jury instructions left the jury basically led by the hand to the highest possible conviction that it could get to, because remember the – Well, that's not right. I mean, they could have convicted him of first-degree murder based on the evidence that was presented. Only if they have found intent to kill. Right. I mean, but didn't the State try to argue that he went back to the outbuilding or wherever the rifle was to pick it up in the middle of the fight? Again, I think you have to take all of these instructions in context. It was very shortly before the defense began its case that the State requested all of these lesser-includeds, including involuntary manslaughter. At that point, the – when essentially the defense of all or nothing disappeared, it evaporated, the defendant was left with a choice – well, actually with no choice. I mean, all of the two choices that were consistent with his defense were both taken away from him. But is that as a result of how the evidence played out? Because the trial judge found that the State was entitled to the instructions based on how the proof came in at trial, correct? If it had been a correct instruction on voluntary manslaughter, yes. Okay. And they were also entitled, I would submit, to an involuntary manslaughter instruction, too. And you take the whole thing in context. And given the instructions that were partly admitted, partly properly admitted, partly improperly admitted, immediately before the defense started their case, this thing so infected the trial that it really did take away his right to argue his defense, and it took away the – it so infected the trial that it violated due process. And I'd like to save my last minute. You have about a minute and a half. Thank you for your argument. It was a very good one, by the way. William and State at this time. Counsel. Thank you. Good morning. Justin Riley on behalf of the Warden. I'm not inclined to snatch defeat from the jaws of victory. Well, don't assume from our questioning that you've won yet, but say what you need to say. I would like to touch on two things that counsel brought up. First, Keeble, the United States Supreme Court opinion. Unfortunately, it was sitting – fortunately for me, unfortunately for Mr. Messer, the court there was sitting as a supervisorial court on direct appeal, construing Federal Rules of Criminal Procedure 31. It wasn't a constitutional case. As to – we have a dearth of clearly established Supreme Court precedent supporting the claims. Obviously, as the Court recognized, there is no clearly established Supreme Court precedent that in a noncapital case a defendant is constitutionally entitled to a lesser included offense instruction. What is the error here, the due process error that Mr. Messer is claiming occurred? He's – he's claiming, if we accept everything that he argues, he's claiming that he did not get the benefit of a lesser included offense instruction. Basically, he's arguing that he did not receive something he's not constitutionally entitled to. That's the error. It can't – it can't amount to due process error because he's not constitutionally entitled to that instruction. The other error that Mr. Messer is arguing occurred is the hypothetical error that the jury might have wanted to find him guilty of something lesser than the second degree murder. And he analogizes to Keeble and other cases. Beck v. Alabama is another one in a death penalty context. And these cases gave the jury basically and strictly an all-or-nothing choice. It was death or acquittal in Beck v. Alabama. The prosecutor stood before the jury and said, you either have to kill him or you have to let him go. That's all or nothing. Here, the jury was presented with three options, first degree murder, second degree murder, and voluntary manslaughter. The fourth, obviously, would be acquittal. Here, the jury, if the jury was inclined to find him guilty of something less than second degree murder, they still had the option to find him guilty of voluntary manslaughter. And I quote to you from volume two of the excerpts of record at page 22. The jury was specifically instructed at about line 18, to establish that a killing is murder and not manslaughter. The burden is on the people to prove beyond a reasonable doubt each of the elements of murder and that the act which caused the death was not done in the heat of passion or upon sudden quarrel. If the jury had not found that this was not – let me turn that around and make it positive. If the jury had found that this killing was in the heat of passion or upon sudden quarrel, they were bound to find him not guilty of second degree murder and then have the option to find him guilty of voluntary manslaughter. They had the option, not that the Constitution requires a jury to have an option of finding a defendant guilty of some lesser offense, but they did have that option. Finally, in addition to the State Court of Appeals harmless error analysis, which was pretty involved, Messer objected to all lesser included offense instructions. He opted at all times, consistent throughout, that he wanted an all or nothing theory of the defense to be presented to the jury. He did not want lesser included offense instructions. Even so, as I explained, the jury still could have found him guilty of voluntary manslaughter. And if the Court doesn't have any questions, I'm inclined to ask them. Roberts. I don't see any. Thank you, counsel. Thanks for coming in. Rebuttal. First, we are claiming that a legally wrong instruction that the State requested and that the trial court erroneously granted right before the defense began is the problem here. But we have to find, as you finished your last argument, that the failure or the giving of an improper instruction or the failure to give an involuntary manslaughter instruction so tainted the trial that your client was deprived of due process. That or that it prevented him from presenting a full defense. And obviously, that is my argument. And you take them all together. But he didn't want an involuntary manslaughter defense. He wanted to run the gauntlet with murder one. He didn't want it, but he didn't get what he wanted. It was the State. It was the State that insisted. But the State was entitled, based on how the evidence came out in its case in chief, to ask for instructions unless they're included. But, number one, it was only entitled to ask for correct instructions. Number two, it was only entitled to ask for complete instructions. It seems strange to me that the State is now arguing at this stage that, gee, the defense didn't object, therefore there's no problem with not giving an involuntary manslaughter instruction, when it was the State itself that requested that instruction. Obviously, they thought they were entitled to it. Obviously, they thought it was error not to give it. And now they're saying, no, because you didn't object, you know, there's no problem. But remember that the defense has to live with what instructions are given, and they have to structure their arguments and their case around that. And when, you know, a few minutes before they begin their case, they get handed at the State's request an erroneous instruction, an incomplete instruction, and a set of instructions that's taken as a whole, if the lack of intent to kill is believed by the jury, the only thing they can give is second-degree murder, that so taints the trial as denied due process and prevent the defense from presenting its defense. Okay. Thank you both for your argument. The case just argued will be submitted for decision.
judges: Hawkins, Tallman, Singleton